Our fifth case this morning is Lovett v. Herbert. Good morning, Your Honors. James Stevenson for the appellants, Herbert and Overton. Why don't you hold up just for one minute? We've got some moving around going on here. Okay, you may proceed. Yes, Your Honors. James Stevenson, attorney for the appellants. This is an interlocutory appeal from the denial of qualified immunity on grounds that existing precedent prior to the date of occurrence was not clearly established under particularized facts. The district court did conclude that the plaintiff did not point to any prior precedent based upon reasonably analogous facts, which normally carries the day in terms of a qualified immunity defense. Despite that, the court did not enter summary judgment based upon qualified immunity. I'm arguing here on appeal that the law was not clearly established under particularized facts to have put these officers on notice that their conduct violated the Fourth Amendment. There was no fair warning from a circuit court decision or the Supreme Court to the effect that the conduct here was in violation of the Constitution, and that's the basis for the appeal. And I might also point out the district court, in my view, incorrectly evaluated the qualified immunity determination based upon whether the officers themselves believed that the facts comported with existing law. That's not the standard. The standard is would a reasonable jail officer confronted with these same facts realize that he's violating the Fourth Amendment? That's the inquiry that the court should have made for qualified immunity purposes. Most of the briefing in your discussion so far has focused on step two of the qualified immunity analysis. I see a problem at step one about whether even accepting these facts in the light most favorable to the plaintiff, they make out a constitutional violation under the Fourth Amendment. That's what the district court ruled, and I'm bound by that for this appeal. Well, qualified immunity has two parts, and you've raised a qualified immunity appeal. And we have jurisdiction to decide legal questions, and there are two in a qualified immunity analysis. The first is whether the facts taken in the plaintiff's favor establish a constitutional violation. And then the second question is whether it's clearly established on that objective test that you've just mentioned. And because this is a Fourth Amendment claim, it is also an objective test. It's not an Eighth Amendment deliberate indifference medical kind of test. The district court kind of merged the two a bit. At both steps it seems to me, but ultimately I think did apply a Fourth Amendment objective reasonableness standard to step one of qualified immunity. But I have some difficulty with that step one about whether we even have on the best version of the plaintiff's facts, taking everything the plaintiffs say is true, that we have an objectively unreasonable seizure going on here. I agree completely. And the reason I'm suggesting that the court on a jurisdictional level, can the court address prong one at this stage, seeing as the district court ruled against me on prong one? Typically not, although if the court concludes otherwise, then I'm all for it, because I don't think the facts, even under plaintiff's version of the facts, constitute a Fourth Amendment violation. Right, and that's a legal question. The Johnson jurisdictional principle, as explained by this court instance and doesn't apply to legal questions, only applies to disputes about facts, historical facts. And so taking the plaintiff's facts, the district court concluded that there was enough evidence, by virtue of the fact that Mr. Martin said I was too drunk to get on the upper bunk, and he was highly intoxicated as opposed to intoxicated. The court found that's enough to at least sustain a jury issue. Let me ask you a question about the undisputed facts. How important is it to your case this point about putting the mattress on the ground? Because the district court found that as an undisputed fact, but the plaintiffs below are saying that it was actually disputed. It's not disputed, because not only did the court find it, but they admit by way of answers to interrogatories and deposition testimony that that occurred, because Mr. Martin lived for six months, and he gave an account to his sister while in the hospital. I was confused by why they said that it was disputed. It's not disputed. And why is it important? Well, it would certainly be important in a deliberate indifference case, but we don't have that. But it's still important insofar as an objective reasonable inquiry and as to why he was put in this cell, or left there, if you will, temporarily, as opposed to being put in a drunk tank. Well, I just meant if you lost that fact, do you think you would lose? I actually think that even if they hadn't said that about the mattress, there certainly are a number of other facts. I was just wondering how important that fact was to you. I think it's an important fact, because it shows that we didn't direct him to get on the upper bunk. He was assigned to the cell temporarily with the plan to transfer the ICE detainees out and put them in the drunk tank. If he was, he had been arrested for driving while intoxicated. There were limited opportunities as to where to house him. He did make the remark as per the court. I disagree, but he made the remark, well, I'm too drunk to get on the upper bunk. So accepting that as a fact, then I think it's important to show, well, we tried to accommodate him, because accommodation, and we're talking about the Fourth Amendment here, which is typically not the amendment we use for jail cases. But because we are stuck with the Fourth Amendment analysis here, we have to look at what was the nature of the problem the plaintiff had, and how did we react? How did we accommodate? Did we accommodate? Well, yeah, we said, well, okay, put the man on the floor, lie there, and then we'll move you to the drunk tank. So I think it's important for Fourth Amendment analysis. And I would point out to the court also that while the plaintiffs have cited various district court cases, those cases do not define the law for qualified immunity. So I think the fair inquiry that the court should have employed here, the district court, is whether a temporary replacement of a highly intoxicated arrestee in the cell with access to an upper bunk, with no requirement that he use the bunk, violates the Fourth Amendment under clearly established law. And I suggested to the court there's no circuit court case that's so held. Even the district court concedes as much. The court appeared to rely on the obvious, so-called obvious exception. I take issue with that exception's application in this case. I also question whether there is an obvious exception, although I cited the court to the most recent Supreme Court case that cites the obvious exception, so I guess it's still the law. I would like to reserve my remainder for rebuttal. That's fine. Thank you. Mr. Sutherland. My name is Michael Sutherland, and along with my colleagues Mary Jane LaPointe and Danny Kent, we are representing the estate of Danny Jo Martin. Based upon the inquiries of the court, I think we need to clear up some confusions. According to the National Institutes of Health, Danny Jo Martin suffered severe impairment, that's the medical problem, because of his alcohol consumption. With his blood alcohol at 0.16, Martin would have the following problems, according to the National Institute of Health or any other public website, such as the Center for Disease Control. He would have severe problems with memory, coordination, attention, reaction time, and balance would be significantly impaired. NIH provides further warnings. All driving skills are dangerously impaired and judgment and decision-making dangerously impaired. These are verbatim quotes from the National Institute of Health. So what is the issue? He has a medical problem. He is severely impaired because of his alcohol consumption. The jailers know that because they're making a conscious decision about where to place him. But they make a calculated risk for their convenience, not for the benefit of the individual who is suffering from severe impairment. That's the way the NIH describes it, severe impairment. So the questions I've heard from the panel here suggest that he's a reasonable person, that he's got a choice. All he has to do is make the right choice. But that's the problem with somebody who's severely impaired. They don't make the right choices. If you go back to the record, he was stopped by State Trooper Brown. Why? Because he couldn't drive the car. He went off the road. So it helps that they took the car away from him, because now he can't hurt himself or anyone else with the car. But the rest of the problem is still there. So when he's presented to the jail, any jail, he has to be treated with the knowledge that he is severely impaired, which means they place him, they have to have a suitable placement for him, which does not allow him to hurt himself. So we proposed to everybody, including the Sheriff Heaton and the deputies, and they all agreed that they had a duty, which is the standard we're talking about. They had a constitutional duty to protect any inmate who is presented for custody, to protect them in a safe environment. And that means several things. That means proper placement. That means monitoring. So you have the video, but we also have, and this wasn't mentioned, we also have the jail log. And the jail log requires, as does the statute, that the jail officers make a round every hour or so. So according to the jail log, which I assume is supposed to be an accurate business record, and if it wasn't there should be some penalties, not criminal charges, at 128 advised offender Martin to take the mat from the top bunk and to sleep on the floor due to him not being able to get on the top bunk. Now if you look at the diagram, you can barely get the mattress in there. You'd have to tuck it under the bottom bunk. And if Mr. Gould, who was in there because of a serious cancer operation and had to be monitored in case he was in pain or was suffering or had some consequence, some infection or some other consequence because of that surgery, they were monitoring people in that cell for that reason. They were special inmates, not just regular people. So he's put in there at 128. According to the log, at 138, Zachary Overton conducts a watchtower tour. That means he poked his eyeball up to the peephole and looked in. That would have suggested that he now knows that Mr. Martin has not followed his advice and he's gone to the top bunk. Now they don't mention that. Second tour, it clears at 228. Counsel, assume everything you're saying is true. What's the clearly established law? Sorry? Assume everything you're saying is true, from the log, all the facts construed in your favor. What is the clearly established law? The clearly established law is actually addressed in several cases which we cite. One of them is Miller v. Marbury, which Judge Sykes set on. The clearly established law is that a jail officer has a duty to address a serious medical need, an obvious medical need. The obvious medical need, he is severely impaired from alcohol. In the Miller v. Marbury case, which Judge Posner wrote, he assumed, which I think correctly, they sued the wrong people. And they couldn't attribute to the correctional officer that he knew that Mr. Miller had a tumor. But had he known, he would have had an obligation then to at least go back and see why he was now assigned to a top bunk because, generally speaking, they know. Is that clearly established, that by implication that opinion suggests that if? I mean, it didn't hold that. I mean, how could that have really put them on the hook? Well, the summary judgment was upheld, yes. But the standard was not challenged. And the standard is if you know there's a clear medical problem, had the correctional officer known of a clear medical problem, then he would have to have responded that way reasonably. But, sir, the Miller v. Marbury case, there were two falls before the ultimate fall that caused the injury that they took him away in the hospital. The jailers knew of two previous falls, ignored them, kept keeping him, allowed him to go back to a top bunk, and it was on the third fall they finally took action. That's not these facts. No, it's not these facts. Right, based on a chronic medical condition. Yeah, but see, here's what they did. According to the depositions of Mr. Herbert, this is the only time they used that holding cell bullpen to hold the ICE detainees. And he also says it's the last time they did. So this was a convenience decision to place the ICE detainees there. When we did the sheriff's deposition, he says there's no reason why they could have been intermingled. Well, that may be true, but it doesn't go to the question of whether there was a clearly established constitutional duty that the officers violated here. I think it does, Judge, if I may say so, because a clearly established standard means that if you are aware of a medical problem, you have to act reasonably. Putting an impaired person who can't make good judgment calls and lacks coordination in a cell and then give them the opportunity. By analogy, if I may, it's like telling somebody who is suicidal, clearly suicidal, to step into the cell with a dangling electric cord and say, don't pay any attention to that, I'll be back in 30 minutes. Now, the reasonable person says, oh, 30 minutes, I can wait. I won't have to commit suicide in 30 minutes. But they don't. They commit suicide. And so in the case of Clark v. Walker, that's what they found, is that they clearly violated the established law to protect somebody who had a known medical problem. The other alternative, they could have put him in a padded cell, but they said, no, we may have an inmate that's going to act up. We're saving that. Again, that's for their convenience. What about Mr. Martin? What about Mr. Martin, who had a history of alcoholism? It wasn't like he was an unknown person. They all said that they had some experience with him. So suppose the police officer who stopped him, Stupor Brown, says, I got it, this is a subjective call. 1.6, you don't look drunk to me. Take the car on home. For a 30-minute drive, you won't be in trouble. That's what you're asking, as I understand from your questions, to be the law. And that is simply not the law. Well, there's no evidence that these officers knew what his BAC was. Well, no, he was arrested because the car was off the road. Right, but there's no evidence that they knew the results of his breathalyzer test, the PBT. Yes, there is evidence of that. The remand sheet says .16 on there. But there's no evidence that they saw that. Well, let me see if I get this right. They don't have to look at anything, and they don't have to test anything, and they just have to take their own subjective reliance on his appearance? I don't think so, Judge. The bookend process requires them to take into account that person's condition. They go through the questionnaires, if you remember, the questionnaires, to see what his problems were, and he says, I'm drunk. Okay, now how drunk? All you had to do was look at the document. And I think you're supposed to take our position. The evidence is remand is part of the arrest record. You're supposed to take the plaintiff's position that that is part of the record and not contest it. Now, when you look at Jim Stevenson's brief, he says in the initial brief on page 1, we accept all the facts of the plaintiff for purposes of determining whether or not there is a qualified immunity issue. And then he goes on in his reply brief and lists 13 items and says these are uncontested. Thirteen. We only agree with four. The others are challenged. That's reasonably raised the jurisdictional issue. You can't say this is a clearly established law on these very specific facts, but you can say as a reasonable person, which is a standard here, a reasonable person who is well-trained would be put on notice. See, I'm running out of time. I wish I could address some more questions that you have. But that's the argument we make. We would ask you to reaffirm the summary judgment and return the matter for a trial. Thank you. Mr. Stevenson? Thank you, Your Honor. I do want to clarify one thing. The ICE detainees were not put in the junk tank by my clients. They were there before they came on ship. This was a program the sheriff employed to house them for transit. Secondarily, the appellant's appendix at page 56 clearly shows that Officer Overton did a watch. Once the door was closed on this cell, he did a watch tour of the other portion of the jail. He did not do a watch tour of the receiving area where Mr. Martin was. And then finally, I think the record establishes the security reasons, or call them penological reasons, as to why the officers chose to temporarily house Mr. Martin in this cell as opposed to the other options. It may not have been the best decision with hindsight, but that doesn't mean there was clearly established law which would have dictated to them that it's unconstitutional. So unless there are other questions, I will conclude my arguments. All right. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.